IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARVIN B. STRODE, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 14-cv-00851-JPG-DGW |
| EAST ST. LOUIS PARK DISTRICT, | ) Jury Demanded |
| Defendant. | ) |

## COMPLAINT

Plaintiff Marvin B. Strode, by his attorney, brings this suit against Defendant East St. Louis Park District for retaliation and breach of contract and states as follows:

### CONDITIONS PRECEDENT

1. Prior to the institution of this lawsuit, the Plaintiff filed a charge with the Illinois Department of Human Rights and the U.S. Equal Employment Opportunity Commission against the Defendant East St. Louis Park District alleging violations of the Title VII of the Civil Rights Act and the Illinois Human Rights Act on account of retaliation and disability discrimination. A copy of the Plaintiff's charge is attached hereto as Exhibit A and incorporated herein by reference. The Plaintiff received a "Right to Sue" letter on April 30, 2014, this lawsuit has commenced within ninety (90) days thereafter, and all conditions precedent to the institution of this lawsuit have been performed or have occurred

### PARTIES

2. The Plaintiff Marvin B. Strode is an African-American natural person who resides in the Village of Washington Park, Illinois.

1

3. The Defendant East St. Louis Park District is a body corporate and politic which has the power to sue and be sued pursuant to 70 ILCS 1205/8-1. Its principal place of business is 2950 Caseyville Ave., East St. Louis, Illinois 62202.

## JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(3) and (4), and 42 U.S.C. § 2000e-5(f)(3) because Plaintiff's claims arise under federal law, including Title VII of the Civil Rights Act, 42 U.S.C. 2000e *et seq.* ("Title VII").

5. This Court has supplemental jurisdiction over Plaintiff's causes of action based on state law pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the same case or controversy.

6. This Court has jurisdiction to issue a declaratory judgment for the foregoing violations pursuant to 28 U.S.C. §§ 2201 and 2202.

7. Venue is proper in in this District under 28 U.S.C. § 1391(b) because Defendant is a resident of this District and because a substantial part of the events giving rise to these claims occurred within the Southern District of Illinois, as more fully described below.

## FACTUAL ALLEGATIONS

8. The Defendant operates a police department in the East St. Louis Park District ("Park District") the employs approximately five (5) police commissioners, one (1) full-time police officer and approximately fourteen (14) part-time police officers and three (3) administrative assistants.

9. The Plaintiff was employed by The Defendant as its Chief of Police ("Chief") from 2004 to 2013.

10. On or about June 15, 2009, the Defendant's Board of Commissioners approved a three-year contract of employment for the Plaintiff, ending on Feb. 28, 2012. A copy of the contract the Plaintiff signed and gave to the Department in June 2009 is attached hereto as Exhibit B and incorporated herein by reference. Plaintiff is informed and believes that this contract was duly executed by a representative of the Defendant on or about that same time. The parties renegotiated the foregoing contract on or about May 4, 2011, when its Board of Commissioners approved a new three-year contract for the Plaintiff as its Chief of Police. The terms and conditions of the new contract were the same as the prior contract.

11. The contract provided, among other things, the Chief's salary and benefits would not be reduced except to the extent of an even, across-the-board reduction for all Park District employees, and that after the first year of employment, the Chief could be disciplined or discharged only for just cause, upon proper notice and after a hearing at which the Chief was entitled to be represented by counsel. At all times relevant herein, the contract provided that Chief's annual rate of pay was approximately $34,000.00.

12. On or about January 14, 2013, the Plaintiff was granted a leave of absence by Defendant due to health and medical reasons. The Plaintiff believed he had pneumonia due to extreme difficulties in breathing and walking and was admitted to the hospital on an emergency basis. Plaintiff was placed on medical leave by the Defendant due to due to congestive heart failure, hypertension, and obesity. The Defendant approved twelve (12) weeks of leave for Plaintiff under the Family and Medical Leave Act.

13. At all times relevant herein, because of the foregoing medical conditions, the Plaintiff was substantially limited in the major life activities of breathing, walking and working, among other things.

14. The Plaintiff applied for temporary disability benefits from the Illinois Municipal Retirement Fund in February 2013, which was eventually granted. Thereafter, the Plaintiff had a stroke in late April or early May 2013. His physician indicated at that time that the Plaintiff could be expected to return to work in January 2014. The Plaintiff later suffered an infection requiring another admission to the hospital. However, the Plaintiff participated in an extensive rehabilitation program, which enabled him to return to work part-time May 16, 2013. The Plaintiff expected to return to work full-time for the Defendant at his contractual rate of pay in August 2013.

15. The Defendant appointed Marion Hubbard as its Acting Chief on or about January 16, 2013, and thereafter appointed Hubbard as its Chief of Police on or about May 6, 2013. At that time, the Defendant approved the appointment of the Plaintiff as a consultant for the Park District Police Department with the rank of Deputy Chief (or "Colonel"). Plaintiff remained on the Defendant's roster of police officers, his work status was recorded as "full time," and his commission was set to expire on May 24, 2015. He was not paid a salary but was allowed to maintain his Department health insurance coverage, professional liability insurance, injured-on-duty insurance benefits, and kept his Department police car, radio, and cell phone.

16. On or about May 16, 2013, after returning early from the leave he was granted due to his stroke, the Plaintiff returned to work part-time at the Park District Police Department. He assisted Chief Hubbard with scheduling police officers for duty, preparing and filing reports, such as reports to the Law Enforcement Training and Standards Board, and other duties as requested. At all times thereafter, the Plaintiff's performance met or exceeded the Defendant's expectations and the Plaintiff was able to perform the essential functions of his job with accommodations.

17.     On or about May 29, 2013, the Plaintiff attended a mandatory reorganization meeting, which was called by Chief Hubbard, of all permanent and part-time police officers of the Defendant. At that meeting, two African-American female police officers, Lt. Marquitta McAfee and Lt. Draphy Durgins, accused Chief Hubbard of sexual harassment. Their harassment complaints were, among others, of Hubbard repeatedly sexually harassing both of them.

18.     Immediately following the meeting, the two female officers met with the Plaintiff. Others at the meeting included St. Don Stewart and Officer Jeffrey Waters. The Plaintiff then learned that Hubbard often communicated he wanted to have sex with the two female officers, made lewd and sexually suggestive comments to them and to others about them, and touched both of the female police officers in an offensive and unwanted manner, such as by rubbing his hands on Lt. Durgins' back or pressing the front of his body against Lt. McAfee while she was seated at a desk.

19.     The Plaintiff encouraged the female officers to file a report of sexual harassment with the Defendant's Executive Director, Irma Golliday, and in the event they received no meaningful response, to file a complaint with the Illinois Department of Human Rights or the Equal Employment Opportunity Commission. The Plaintiff also advised the two female officers the Park District had no current policy prohibiting sexual harassment.

20.     Separate sexual harassment complaints against Chief Hubbard were then made to Ms. Golliday by Lts. McAfee and Durgins, as well as by Avis Thomas, a female Park District Commissioner, on or about May 30, 2013. Complaints by Lts. Durgins and McAfee alleging sexual harassment by Hubbard were later filed against the Defendant with the Illinois Department of Human Rights.

21. On or about May 30, 2013, Plaintiff returned to the Park District to advise Ms. Golliday about the foregoing complaints of sexual harassment. At about this time, the Plaintiff learned that other complaints of sexual harassment against Hubbard were previously made to Ms. Golliday by two other persons, Donna Ferrell, a Park District employee, and Linda Connors, a former Park District employee, but were never investigated and no corrective action was taken. The Plaintiff believed the complaints of Lts. McAfee and Durgins were true and Ms. Golliday should immediately take corrective action to protect these female officers and prevent future misconduct.

22. As he approached Ms. Golliday's office, he overheard a conversation between Marion Hubbard and Ms. Golliday in which Hubbard recited that the Plaintiff had a close association with the two female officers. In his conversation with Ms. Golliday, Hubbard then accused Plaintiff of trying to undermine him as Chief by encouraging the two female officers to file false sexual harassment charges against him with the Illinois Department of Human Rights.

23. Hubbard made the same false charge – that the Plaintiff put the female officers up to saying that Hubbard sexually harassed them – to Sgt. Don Stewart of the Park District Police Department within the same week.

24. On May 30, 2013, twenty minutes after the Plaintiff overheard the foregoing conversation, the Plaintiff was discharged by the Defendant. First, Ms. Golliday called him to advise his Park District health insurance benefits would be cut off on June 1, 2013. In that conversation, the Plaintiff told Ms. Golliday that an outside agency had to investigate the complaints of the two female officers but Ms. Golliday insisted that she would conduct the investigation by herself. On May 31, 2013, Hubbard demanded that the Plaintiff turn in his Park District cell phone and radio. Hubbard told the Plaintiff at that time that the Plaintiff was

physically unfit to serve as a police officer and a liability to the Park District, to which the Plaintiff responded that he was ready and physically able to work, as the Plaintiff had demonstrated since returning from leave. Immediately thereafter, the locks were changed at the Police Department and the Plaintiff was not given a new key. Hubbard also gave orders to other Park District police officers not to permit the Plaintiff to enter into the building after 4:00 pm. Within two weeks, the Plaintiff's police car was towed away without prior notice to the Plaintiff.

25. On or about June 18, 2013, the Plaintiff was "involuntarily retired" as a police officer by the Defendant, without notice or hearing and without just cause.

26. The Defendant's actions described above were intentional and taken because of the Plaintiff's protected activity, namely his advice and encouragement to Lts. Durgins and McAfee to file sex harassment complaints with the Illinois Department of Human Rights or the Equal Employment Opportunity Commission against Marion Hubbard and the Defendant. The Defendant further continued to retaliate against the Plaintiff after the Plaintiff encouraged Ms. Golliday to report the sexual harassment complaints to the proper agency so they could be appropriately investigated.

27. Other present or former Park District police officers and employees have or have had illnesses and physical disabilities which are comparable or even more severe than the Plaintiff in all material respects but were not involuntarily retired or discharged from employment by the Defendant. Several of these police officers were age 60 or even 70. These police officers include Lt. Kenneth Kimbrow (diabetes; deceased), Lt. Ray Willis (cancer; deceased), Capt. Henry Williams (diabetes, obesity, hypertension; deceased), Jimmy Golliday (heart attack; deceased), and Eddie Golliday, the husband of Irma Golliday (congestive heart failure, obesity, hypertension, pacemaker; currently employed).

28. As a proximate result of the Defendant's conduct, the Plaintiff has suffered and continues to suffer humiliation, mental pain and anguish, as well as loss of earnings, retirement benefits and other employment benefits that he would have received absent the Defendant's discrimination.

## COUNT I – Retaliation under Title VII

29. The Plaintiff realleges Paragraphs 1-28 as if fully set forth herein.

30. The Defendant is a person within the meaning of 42 U.S.C. § 2000e(a) and an employer within the meaning of 42 U.S.C. § 2000e(b).

31. The Plaintiff is an employee within the meaning of 42 U.S.C. § 2000e(f).

32. The Defendant discriminated against the Plaintiff by retaliating against him, namely by terminating his employment, in violation of Title VII, 42 U.S.C. 2000e-3(a), because he opposed an unlawful practice, assisted others in filing a well-founded complaint of sexual harassment under Title VII and encouraged the Defendant to properly investigate said complaints.

33. The Defendant did not have adequate policies or procedures in place to address sexual harassment or retaliation, nor did it implement prompt remedial measures when notified of the employment practices the violated Title VII.

34. As a proximate result of this discrimination, the Plaintiff has lost wages, employee benefits, and suffered humiliation, pain and mental anguish as described above.

## Count II: Retaliation under IHRA

35. The Plaintiff realleges Paragraphs 1-34 as if fully set forth herein.

36. The Plaintiff was an "employee" of the Defendant within the meaning of the Illinois Human Rights Act, 775 ILCS 5/1-101(A)(1).

37. The Defendant is an "employer" within the meaning of the Illinois Human Rights Act, 775 ILCS 5/1-101(B).

38. The Defendant discriminated against the Plaintiff by retaliating against him, namely by terminating his employment, in violation of the Illinois Human Rights Act, 775 ILCS 5/6-101(A), because he opposed an unlawful practice, assisted others in filing a well-founded complaint of sexual harassment under the Human Rights Act and encouraged the Defendant to properly investigate said complaints.

39. As a proximate result of this discrimination, the Plaintiff has lost wages, employee benefits, and suffered humiliation, pain and mental anguish as described above.

## COUNT III – Breach of Contract

40. The Plaintiff realleges Paragraphs 1-39 as if fully set forth herein.

41. The Defendant and the Plaintiff entered into a contract in 2009, renewed May 4, 2011, whereby the Defendant agreed to pay the Plaintiff for performing the work duties assigned to him.

42. The Plaintiff fulfilled the contract by performing his work duties in accordance with his employment contract.

43. The Defendant breached the contract by discharging the Plaintiff without just cause and without notice or hearing, as well as by eliminating the Plaintiff's employment salary and benefits without also reducing the salary and benefits of other employees on an even, across-the-board basis.

44. The Plaintiff suffered damages as a result.

45. The Plaintiff seeks all damages to which he is legally entitled as a result of the Defendant's breach of the contract.

## RELIEF SOUGHT

WHEREFORE, the Plaintiff prays for an order entering judgment against the Defendant as follows:

A)  For an order declaring the Defendant's actions described above violated Title VII of the Civil Rights Act and the Illinois Human Rights Act;

B)  For an order declaring the Defendant breached its contract with the Plaintiff;

C)  For judgment in favor of the Plaintiff and against the Defendant for his consequential damages suffered on account of the Defendant's breach of contract;

D)  For judgment in favor of the Plaintiff and against the Defendant for reinstatement, back pay, and compensatory damages, including past wages and benefits, both past and future, the sum to be determined at trial;

E)  For an order awarding the Plaintiff his reasonable attorney's fees, costs and expenses;

F)  For an order awarding the Plaintiff pre-judgment and post-judgment interest at the highest rates allowed by law; and

G)  For an order granting such other and further relief as may be just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a trial by jury on all issues triable by a jury.

Respectfully submitted,

/s/ *Thomas E. Kennedy, III*
**THOMAS E. KENNEDY, III**
*Law Offices of Thomas E. Kennedy, III, L.C.*
906 Olive St., Ste. 200
St. Louis, MO 63101
314.872.9041 phone
314.872.9043 fax
tkennedy@tkennedylaw.com
***ATTORNEY FOR PLAINTIFF***