IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARVIN B. STRODE, | ) |
|        Plaintiff, | ) |
| v. | ) Civil Action No. 14-cv-00851-SMY-DGW |
| EAST ST. LOUIS PARK DISTRICT, | ) Jury Demanded |
|        Defendant. | ) |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SANCTIONS

Now comes the Plaintiff, by his attorney, and for his response to Defendant's Request for Sanctions, states as follows:

The Defendant suggests that Plaintiff should be sanctioned for making deliberately false statements in his affidavit, in his response brief, and in the affidavit of Jeffrey Waters attached to his response to the summary judgment motion. The Defendant claims that these statements are "willfully" false and made only to create factual disputes to avoid summary judgment. The Defendant claims that this lawsuit should be dismissed and attorney's fees should be awarded to the Defendant because of Plaintiff's allegedly egregious conduct. The Defendant says that its motion is grounded upon Fed. R. Civ. P. 56(g) and 28 U.S.C. § 1927. Plaintiff believes Defendant probably intended to refer to Fed. R. Civ. P. 56(h) and will respond accordingly.

The gist of the allegedly false statements itemized by the Defendant is the following: a) Plaintiff lied about first filing an application for Social Security benefits in December 2012 when he previously filed in 1992. (Def.'s Mot. for Sanctions 3) (hereinafter, "Def.'s Mot."); b) Plaintiff lied about his notification by Irma Golliday of his appointment as Deputy Chief and the

1

appointment of Hubbard as Chief in March or April 2012 (typo; should be 2013) when board minutes show the actual appointments in May 2013 (Def.'s Mot. 3-4); c) Plaintiff lied about driving his police car when Defendant's records show the car was inoperable (Def.'s Mot. 4); d) Plaintiff lied in his response brief by claiming Golliday told him he'd lose insurance if he didn't return to work by May 2013 so he asked his doctors to schedule procedures before the end of May (Def.'s Mot. 5); e) Plaintiff falsely claimed that locks at the police station were changed in May 2013 after previously claiming these locks were changed in January 2013 (Def.'s Mot. 5-6); f) Plaintiff lied by citing his doctor's release that he could return to work in May 2013 when this release was actually cancelled (Def.'s Mot. 6-7); g) Jeffrey Waters lied in his affidavit by claiming that Chief Hubbard ordered Plaintiff to gather ID cards of police officers at a May 2013 meeting when Hubbard issued no such order (Def.'s Mot. 8); h) Waters lied in his affidavit that he heard someone tell female officers to file complaints against Chief Hubbard when Hubbard heard no such statements (Def's Mot. 8); i) Waters lied in his affidavit when he stated that he rode with Plaintiff in his police car when the vehicle was actually inoperable (Def.'s Mot. 8-9).

    Fed. R. Civ. P. 56(h) provides the court with the power to impose appropriate sanctions "[i]f satisfied that an affidavit or declaration under [Rule 56(h)] is submitted in bad faith or solely for delay." The Advisory Committee's notes about the 2010 amendments to Rule 56(h) provide: "Sanctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions." *Id.* See *Paniagua v. Max 18, Inc.* 2013 U.S. Dist. LEXIS 157473, *24 (N.D. Ill. Nov. 4, 2013). Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously" may be held to account for the excess fees and costs relating from his or her improper conduct. *Morjal v. City of Chicago*, 774 F. 3d 419, 422 (7th Cir. 2014).

The general rule is that sanctions under Rule 56 must be "proportionate to the wrong." *Ridge Chrysler Jeep, LLC v. Daimlerchrysler Fin. Servs. Ams. LLC*, 516 F. 3d 623, 626 (7th Cir. 2008). A default judgment is appropriate "where a lesser sanction under the circumstances would unfairly minimize the seriousness of the misconduct and fail to sufficiently deter such misconduct by others in the future." *Rosenthal Collins Grp., LLC v. Trading Techs. Int'l, Inc.*, 2011 U.S. Dist. LEXIS 17623, *20 (N. D. Ill. Feb. 23, 2011). Dismissing a case with prejudice "is extreme and 'must be infrequently resorted to by district courts.'" *Id. at *22*, citing *Schilling v. Walworth County Park and Planning Conn'n*, 805 F. 2d 272, 275 (7th Cir. 1986). The proper standard for dismissal with prejudice is the "preponderance of evidence." *Ridge Chrysler Jeep, LLC*, 516 F. 3d at 625.

Sanctions under 28 U.S.C. § 1927 are appropriate only when an attorney's conduct is marked by either subjective or objective bad faith. *Krukowski v. Omicron Techs.*, Inc. 2013 U.S. Dist. LEXIS 28062, *13 (N.D. Ill., Feb. 26, 2013). According to the Seventh Circuit, sanctions under Sec. 1927 are justified (1) in "instances of a serious and studied disregard for the orderly processes of justice,"... (2) when an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound,"... or (3) "where a claim [is] without a plausible legal or factual basis and lacking in justification." *Id.* (citations omitted).

In the instant case the Defendant does not refer to any discovery noncompliance by the Plaintiff. Defendant does not indicate how it is prejudiced by any of the foregoing examples of Plaintiff's alleged lies except that it must defend this litigation. It fails to establish that any of Plaintiff's statements are actually false, much less that these were submitted in bad faith for the purpose of causing delay. Plaintiff objects to Defendant's reliance upon audio tapes of multiple board meetings for which it has laid no foundation, pursuant to Fed. R. Civ. P. 56 (c)(2), because

3

these tapes are generally incomprehensible and cannot be presented in a form which would be admissible. The Defendant asks this Court to evaluate disputed facts and make a determination that is reserved for the fact-finder, which in this matter is a jury. Utilizing the preponderance standard, the Defendant fails to demonstrate any falsity or bad faith justifying imposition of sanctions against the Plaintiff or his attorneys under Rule 56. Unlike the plaintiffs in *Ridge Chrysler Jeep, LLC,* who "behaved like a pack of weasels and can't expect any part of their tale to be believed," 516 F. 3d at 627, Plaintiff respectfully suggests that his declaration, his pleadings, and the affidavit of Jeffrey Waters are credible, reasonable and offered in good faith. Finally, the Defendant does not offer any subjective or objective examples of counsel's bad faith, as required by Section 1927.

Plaintiff further states as follows:

a) Defendant's first claim is that Plaintiff lied about first filing an application for Social Security benefits in December 2012 when he previously filed in 1992 (Def.'s Mot. 3). Exactly why this matters is not clear. The Defendant did not ask the Plaintiff about this issue in his deposition. The Defendant fails to explain why an application submitted more than twenty years ago is relevant to any matter before the Court. It appears that an application for Social Security benefits was filed by someone using Plaintiff's name and Social Security number in 1992. Plaintiff's signature does not appear on the Disability Report. (Def.'s Mot. Summ. J. Ex. 1.) It is not obvious, in other words, that this unsuccessful Social Security application was actually authorized by the Plaintiff. Based only on Ex.1, it not certain that Plaintiff's statement that he first applied for Social Security benefits in December 2012 is false or made in bad faith with intent to cause delay or needlessly increase the cost of litigation.

    b)    Defendant's second claim is that Irma Golliday, Park District Director, told him in March or April 2012 (*sic.*; typo, should be 2013) that Hubbard would be Chief and he'd be Deputy Chief if he returned to work by the end of May. (Def's Mot. 3-4.) Irma Golliday's affidavit, Def's Ex. 4, does not contradict the Plaintiff's statement. It doesn't say she told Plaintiff anything. Even if it did, it is unclear why Golliday's statement should be believed over that of Plaintiff. The Board minutes at Def's Ex. 2 and Ex. 3 also do not contradict Plaintiff's statement. What remains is a classic "he said, she said" dispute which precludes summary judgment, *Flores v. Giuliano,* 2014 U.S. Dist. LEXIS 92997, *35-*36 (N. D. Ill. July 9, 2014) (collecting cases), and certainly doesn't require an order for sanctions.

    c)    Defendant's third claim is that Plaintiff's statement to the effect that drove his police car through the parks in May 2013 must be a lie because the car was "inoperable." (Def.'s Mot. 4.) Both the Plaintiff and Jeffrey Waters aver that they rode in this police car in May 2013 because plaintiff could manipulate the transmission and make the car run. Minutes of Defendant's board meetings do not contradict Plaintiff's or Waters' statements. Golliday and Hubbard state that the police car was inoperable, parked at Plaintiff's mother's house, and Plaintiff used his private car for patrols. Neither say Plaintiff couldn't keep driving his police car by manipulation of its transmission. Even if they did, there is no reason to believe the affidavits of Golliday and Hubbard over those of Plaintiff and Waters. Defendant has failed to show that Plaintiff's statement was false, submitted in bad faith or with intent to cause delay or needlessly increase the cost of litigation.

    d)    Defendant's fourth claim is a variation on its second. It suggests that Plaintiff lied about his claim that Golliday's instructions to him in March or April 2013 to return to work in May 2013 or he'd lose his medical insurance caused him to ask his doctors to schedule medical

5

procedures more quickly so he could return to work. (Def.'s Mot. 5.) The Defendant claims this can't be true because Plaintiff informed multiple medical providers that his insurance would lapse at the end of May 2013. Once again, the Defendant's claim does nothing to prove or disprove Plaintiff's statement. Defendant also states Plaintiff's statements are contradicted by statements made by Golliday at a meeting in April that Plaintiff didn't attend. It is unclear to which statements Defendant is referring. Even if such statements could be identified, Golliday's contradictions would not establish that Plaintiff's statements were false or made in bad faith.

Defendant had the opportunity but didn't ask the Plaintiff about this alleged discrepancy between his Complaint and Exhibits 9-11 at his deposition. Further, Defendant does not deny that Plaintiff was appointed its Deputy Chief (or "Colonel") and "consultant" at its May 13, 2013 board meeting. (Def.'s Ex. 3, 6). Defendant also doesn't deny that, on May 23, 2013, Plaintiff's work status was reported by Chief Hubbard as "full time" with a status change from "chief to deputy chief (colonel)" as of May 6, 2013 in a report to the Illinois Law Enforcement Training and Standards Board ("ILETSB"). (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 31.) Plaintiff consistently attempted to return to work and always expected to return to work in a full-time capacity. For example, he stated in his declaration that he attended a meeting of the officers of the police department on May 29, 2013 and thought he would be appointed as the second full-time officer of the police department if the department received a grant for which it intended to apply. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 3, ¶ 14). Plaintiff even refused home health services so that he could continue to drive, (Def.'s Ex. 10, 4), which among other things was a requirement of his work. The point of all of this is none of Plaintiff's statements were false, submitted in bad faith or with the intent to cause delay or needlessly increase the cost of this litigation.

6

      e)      Defendant next suggests that Plaintiff falsely claimed that locks at the police station were changed in May 2013 after previously claiming these locks were changed in January 2013 (Def.'s Mot. 5-6). This is a problem of apples and oranges. The Defendant never asked Plaintiff about this during his deposition. Plaintiff's statement to the Illinois Dept. of Human Rights was that Defendant changed locks on his office door in January 2013, when he was still Chief of Police. (Def.'s Ex. 12.) After his termination, Plaintiff believed that locks were changed at the police station and further states that former officers were never before "banned from the building," e.g., the police station. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 3, ¶ 6). Plaintiff's Complaint indicates that locks were changed and police officers were ordered not to allow him in the building after 4:00 p.m. Complaint, ¶ 24. Jeffrey Waters' declaration says the same thing. (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 2, ¶ 8). Once again, Plaintiff's statement is not false or submitted in bad faith.

      f)      Defendant claims that Plaintiff lied by citing his doctor's release that he could return to work without restrictions in May 2013 when this release was actually cancelled (Def.'s Mot. 6-7). The "cancellation" referred to by the Defendant is its interpretation of Plaintiff's convoluted medical records. Actually Dr. Joyce Whang cancelled nothing and Def.'s Ex. 13 says nothing of the kind. Plaintiff acknowledges that Dr. M. Granger saw Plaintiff on May 20, 2013 (Def.'s Ex. 16, 1), and August 12, 2013 (Def.'s Ex. 15, 2) and provided return to work dates of January 2014 (Def.'s Ex. 16, 2) and February 2014. (Def.'s Ex. 17, 2). It also appears that, at least in May 2013, Plaintiff insisted on continuing to drive, arguably so he could return to work, and this may have precluded him for receiving home health services. (Def.'s Ex. 10, 4). However, once again, Plaintiff's statement is not false and or submitted in bad faith.

g) Defendant claims that Jeffrey Water's declaration (Pl.'s Resp. to Def.'s Mot. for Summ. J. Ex. 2, ¶ 4) to the effect that Chief Hubbard ordered Plaintiff to collect ID cards on May 29, 2013 is unbelievable because Waters is s "disgraced former cop" (Def.'s Mot. 8) and because an audio tape does not contain Hubbard's instruction. Defendant again relies on indecipherable and inadmissible audio tapes in support of its claim. The audio tapes have not been transcribed and no one attested to the contents of the tapes based on personal knowledge, so the contents of the audio tapes are inadmissible. See *Fenje v. Feld*, 301 F. Supp. 2d 781, 816 (N.D. Ill. 2003). This is a trivial "he said-he said" dispute which shows only a difference of views, not lies or bad faith. The Defendant does not claim that Waters' statement is inadmissible. Why the Defendant objects to the issue of who collected ID cards is unclear. Defendant does not argue that Plaintiff was ordered to attend this mandatory meeting of Park District police officers and assigned other duties on May 29, 2013 by Hubbard- - like seeking a grant for new radios for the police department - - allegedly at a time when Plaintiff had no responsibilities as a Park District police officer. Nothing about Waters' statement is "blatantly false" or submitted in bad faith, in other words, so sanctions are wholly inappropriate in this situation.

h) Defendant claims that Water lied in his affidavit to the effect that on May 29, 2013, at the mandatory police officer's meeting, he heard someone to his right say "you guys should file a complaint" (Def.'s Mot. 8) after Lts. Draphy Durgins and Marquitta McAfee complained about sexual harassment by Chief Hubbard. In support of its claim, Defendant again relies on an inaudible and inadmissible audio tape and the affidavit of Hubbard to the effect that Hubbard heard no such statement. (Def.'s Ex. 7). What Hubbard heard or didn't hear does not make Waters a liar. This is another "he said, he said" dispute, nothing about it is "blatantly false" or submitted in bad faith, and exactly why this matters is not explained.

8

    i)  Finally, the Defendant repeats its third claim to the effect that Plaintiff and Waters lied when they stated they rode together in a police car. (Def..'s Mot. 8-9). Once again the Defendant does not contradict Plaintiff's assertion that he could manipulate the car's transmission so he could drive the vehicle. Defendant suggests that Waters' and Plaintiff's statements are undercut by Plaintiff's statement to the Human Rights Commission to the effect that Hubbard talked to Waters in mid-June 2013 to corroborate whether or not Plaintiff was patrolling while on leave. (Def.'s Ex. 8, 3). Def.'s Ex. 8 does not contradict Plaintiff's and Waters' statements, so Plaintiff simply cannot understand this argument. Neither Plaintiff's nor Waters' statements that they sometimes patrolled together in Plaintiff's police car is false or submitted in bad faith or with intent to cause delay or needlessly increase the cost of this litigation.

## Conclusion

The Defendant's motion for sanctions wholly fails to show that any of Plaintiff's statements were submitted in bad faith or solely for delay. Similarly, the Defendant does not show that counsel's actions demonstrate either subjective or objective bad faith. As a result, Plaintiff prays that Defendant's motion for sanctions be dismissed and for such other and further relief as may be just and proper.

                Respectfully submitted,

                Law Offices of Thomas E. Kennedy, III, L.C.

                */s/Thomas E. Kennedy, III*
Thomas E. Kennedy, III
906 Olive St., Ste. 200
St. Louis, MO 63101
314.872.9041 phone
314.872.9043 fax
tkennedy@tkennedylaw.com

Attorney for the Plaintiff

## CERTIFICATE OF SERVICE

      I hereby certify that on August 5, 2015, I caused the foregoing to be filed with the Court using the Court's ECF case management/filing system, thereby causing the foregoing to be served upon the following counsel of record:

Kevin C. Kaufhold, Esq.
Kaufhold & Associates, P.C.
5111 West Main Street, Lower Level
P.O. Box 23409
Belleville, IL 62226

                                       */s/Thomas E. Kennedy, III*